of the Waters lantern are transposed or changed by Westlake from the bottom to the top of the guard, and there perform the same, and no additional functions.

The band D, with its flange C, in Waters' combination is inverted by Westlake, and becomes the disc g in his combination, while the annular plate c of Waters' lantern is carried from the bottom to the top of the guard by Westlake, and there becomes Westlake's ring b. The spring catches are the same in both lanterns and fill the same office.

So, by simply inverting Waters' guard, you have exactly Westlake's combination, and you have only to fasten the springs in the bottom of the lantern to the inverted Waters' band D, and you have precisely Westlake's combination. They are built right up of the same parts—the Waters lantern complete—without changing the functions of a single part, or doing anything except to take the globe from the top instead of the bottom of the guard.

It is needless to cite authorities to show that the mere change of the location of the parts of a mechanism, so long as no different or additional function is performed, does not make the mechanism patentable. Westlake cannot take Waters' mechanism, forming a loose globe lantern, and make it his own by simply re-locating the effective parts, so long as no different result is gained, and certainly there seems to me no substantial change in the results to take the globe out of the top instead of the bottom of a lantern guard.

The idea was to take the globe readily from the guard and lantern for the purpose of cleaning it, or replacing it if broken.

If Waters, by the specifications of his patent of July 17, 1855, had taught the whole world how to make a lantern from which the globe could be readily removed through the lower ring of the guard, with the whole mechanism made to operate together as appears to that end, he, in effect, had taught Westlake how to remove the globe from the top of the guard, because it required no invention to make the change. Waters taught everybody how the space between the enlarged ring b, as Westlake calls it, and the body of the lantern should be filled up by the disc g, and how the lantern should be put together in sections, as it were, and the place where the attachment should be accomplished, whether at the top or the bottom of the guard, was, after that, a mere matter of mechanical convenience, or artistic taste, in the construction of the lantern.

It appears to me there can be no doubt that Waters, in his lantern, has anticipated all that Westlake now claims in his patent—his re-issued patent.

It is true, as was suggested in the argument, that the disc g in Westlake's patent performs the double function of a reflector, as well as a means of attaching the guard to the dome; but a disc for a reflector in that place, as the proof shows, was old, and so I do not think the suggestion aids the complainants, as if it proves anything, it is that Westlake did not invent the disc, but only put the spring catches upon it wherewith to fasten the guard to the dome or disc.

I will only take time to allude to one other device, shown in the evidence as prior in point of time and foreshadowing, if it did not accomplish, the same result as Westlake's, and that is Max Miller's patent, obtained August 17th, 1858.

This lantern has a loose globe, removable through the top guard ring, but the disc g or c does not appear in the combination; the same result is accomplished without the disc.

It is true it was urged that Miller's globe is a plain cylinder, and that his device would not allow the use of a globe shaped as Westlake's was; that is, bulging in the middle and contracted at the top. But he made his contraction by a cone above the globe, so as to accomplish the same result.

Finding, then, from the testimony, that Westlake's alleged invention had been successfully accomplished by the prior invention of Waters, it is hardly necessary to discuss the question of infringement.

I will, however, say that his disc, at the top of the globe, was old for the purpose of a reflector, and Waters having used a flange turned outwardly from the bottom of his dome band for the purpose of fastening his guard rods into it, it seems to me Irwin had a right to use it for the purpose of hinging the top ring of the guard of his lantern thereto, thereby making a basket, in which the globe was securely held, and obtaining a result different from that accomplished by Westlake and without the use of any part of the combination to which Westlake had an exclusive right. Irwin's fastenings are not the same as Westlake's—one uses two spring catches, and the other a hinge and spring catch, whereby Irwin makes a basket of his guard in which the globe is safely held. This bill must, therefore, stand dismissed with costs.

The suit of the same complainants against the Chicago Manufacturing Company on the same patent, and involving substantially the same facts, was heard at the same time and same order entered.[2]

DANE (IRWIN v.). See Cases Nos. 7,081 and 7,082.

DANFORD (PARRISH v.). See Case No. 10,-770.

DANFORD (VARNUM v.). See Case No. 16,-888.

## Case No. 3,559.
### Ex parte DANFORTH.
See Case No. 3,560.

[2] [The complainants appealed from this judgment to the supreme court of the United States, which affirmed the same. Dane v. Chicago Manuf'g Co., 131 U. S. cxxvi.]